UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARR INDEMNITY & LIABILITY INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ROSS ISLAND SAND & GRAVEL CO.,<br><br>Defendant. | No. 2:24-cv-03680-DAD-CKD<br><br>FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>(ECF No. 11) |

Plaintiff Starr Indemnity & Liability Insurance Company ("Starr Indemnity") moves the court for default judgment against defendant Ross Island Sand & Gravel Co ("Ross Island").[1] (ECF No. 16.) Plaintiff seeks a default judgment against defendant for damages in the amount of $1,049,077 plus post-judgment interest for breach of a settlement agreement.

Defendant has neither appeared nor opposed the motion. The court previously ordered this motion submitted without appearance and argument pursuant to Local Rule 230(c) & (g). (ECF No. 14.) For the reasons set forth below, plaintiff's motion for default judgment should be GRANTED.

////

---

[1] This motion was referred to the undersigned pursuant to Local Rule 302(c)(19) and 28 U.S.C. § 636(b)(1)(A).

1

## I. BACKGROUND

On May 21, 2021, plaintiff filed a complaint against defendant in this Court, in a case captioned *Starr Indemnity & Liability Insurance Company v. Ross Island Sand & Gravel Co.*, Case No. 2:21-cv-00791-KJM-DB. (ECF No. 1 at ¶ 5.) At the time of the filing of the prior action, defendant provided dredging services in various inland waterways including at the Port of Stockton, California. (*Id.*) Defendant operated a fleet of vessels and plaintiff provided primary protection and indemnity insurance and excess liability insurance to defendant. (*Id.*) The prior action involved a dispute over the sinking of one of defendant's barges and whether defendant adequately disclosed the condition of the barge at the time that it applied for the relevant insurance policies from plaintiff. (*Id.*) Plaintiff contended that defendant failed to do so and sought reimbursement from defendant of over $2,500,000 that plaintiff paid under the policies. (*Id.*) On January 11, 2023, the parties attended a mediation at which the parties agreed to a settlement that provided for dismissal of the action in exchange for payment by defendant to plaintiff of $1,500,000. (*Id.* at ¶ 6.) The parties entered into a Settlement Agreement effective February 8, 2023, to that effect. (*Id.*; *see* Settlement Agreement (ECF No. 1-1).)

In the Settlement Agreement, defendant agreed to pay plaintiff a total of $1,500,000 pursuant to a payment schedule that provided for a total of 21 payments, with the initial payment of $100,000 due within 60 days of the February 8, 2023, effective date. (ECF No. 1 at ¶ 7.) Beginning 30 days after the initial payment, there would be an additional 20 consecutive monthly payments of varying amounts. (*Id.*; *see* Settlement Agreement at § D.1.) In the Settlement Agreement, the parties agreed to a stipulated judgment in the amount of $1,500,000, less any payments made, if defendant breached the agreement by failing to make timely payment and failing to cure the default by the date contained in the notice of default. (ECF No. 1 at ¶ 8; *see* Settlement Agreement at § D.3.) The parties included the stipulated judgment signed by both parties with their complaint in this action. (ECF No. 1-2.)

Defendant has paid $490,000 of the $1,500,000 under the Settlement Agreement. (ECF No. 1 at ¶ 9.) Defendant failed to make any other payments, despite repeated requests from plaintiff. (*Id.*) Plaintiff provided defendant with written notice of its default on April 25, 2024,

informing defendant that it had until May 31, 2024, to cure the default and remit the past-due payments. (*Id.* at ¶ 10.) The Settlement Agreement provided that if defendant failed to timely make any payment due, plaintiff would not take any action to enforce the terms of the Settlement Agreement unless plaintiff provided "written and email notice of the alleged default to [defendant] as provided in Section 10" of the agreement. (Settlement Agreement at § D.4.) In plaintiff's complaint and motion for default, it was unclear whether plaintiff had provided written *and* email notice to defendant about the default in accordance with the Settlement Agreement terms. The Court requested that plaintiff provide this information. (ECF No. 15.) In response, plaintiff filed a declaration stating that a written letter was sent to defendant's president, Randall Steed, and to the addresses contained in section 10 of the Settlement Agreement via USPS certified mail on April 24, 2025. (ECF No. 17; *see also* ECF No. 16.) Plaintiff was unable to locate the actual executed default letter that was mailed. (ECF No. 17 at ¶ 5.)

Plaintiff repeatedly followed up with defendant and received assurances from Mr. Steed that the remaining balance under the Settlement Agreement would be paid. (*Id.* at ¶ 11.) However, defendant failed to make any additional payments to plaintiff, and there remains an outstanding balance of $1,010,000 owed under the Settlement Agreement. (*Id.*)

Plaintiff initiated the present action on December 23, 2024, asserting a claim for breach of the Settlement Agreement. (ECF No. 1.) Plaintiff requests that the Court enter judgment in its favor against defendant for the amount of plaintiff's damages, costs of suit, interest, and attorney's fees. (*Id.* at 5.) On December 31, 2024, plaintiff filed a proof of service indicating that defendant was personally served through a registered agent on December 27, 2024. (ECF No. 6.)

On February 18, 2025, plaintiff requested a Clerk's Entry of Default as to defendant (ECF No. 7), and on February 19, 2025, the Clerk entered default against defendant (ECF No. 8). Plaintiff's motion for default judgment filed March 21, 2025 (ECF No. 11) is now before the Court.

II.   **LEGAL STANDARDS**

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought if that party fails to plead or otherwise

3

defend against the action. *See* Fed. R. Civ. P. 55(a). The decision to grant or deny an application for default judgment lies within the sound discretion of the district court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true except for the allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); *accord Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Where the pleadings are insufficient, the court may require the moving party to produce evidence in support of the motion for default judgment. *See TeleVideo Sys.*, 826 F.2d at 917-18.

Default judgments are ordinarily disfavored. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In making the determination whether to grant a motion for default judgment, the court considers the following factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471-72.

### III. DISCUSSION

#### A. Jurisdiction

##### 1. Subject Matter Jurisdiction

When default judgment is sought, the "district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted). Plaintiff brought this complaint pursuant to 28 U.S.C. § 1332. District courts have original jurisdiction of all civil actions between citizens of different States in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

costs." 28 U.S.C. § 1332(a). This requires complete diversity of citizenship and the presence "of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." *Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 679 (9th Cir. 2006) (citations omitted). A corporation is deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 94 (2005) (citing 28 U.S.C. § 1332(c)(1)). Plaintiff is a corporation organized under the laws of the State of Texas, with its principal place of business in New York, New York. (ECF No. 1 at ¶ 4.) Defendant is allegedly a corporation organized under the laws of the State of Oregon, with its principal place of business in Portland, Oregon. (*Id.* at ¶ 3.) The amount in controversy exceeds $75,000. (*See id.* at ¶¶ 11-12.) The parties are completely diverse, and the Court has subject matter jurisdiction over this action by way of diversity of citizenship pursuant to 28 U.S.C. § 1332.

### 2. Personal Jurisdiction

To enter default judgment, the court must have a basis for the exercise of personal jurisdiction over the defendants in default. *In re Tuli*, 172 F.3d at 712. "Without a proper basis for [personal] jurisdiction, or in the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007).

In order to subject a non-resident defendant to personal jurisdiction, that defendant must have enough minimum contacts with the forum state that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citations omitted).

Here, plaintiff states that a substantial part of the events giving rise to the claim occurred in this district, including that the underlying action upon which the settlement agreement is based occurred in this district and the Settlement Agreement was negotiated and entered into following a mediation in this district. (ECF No. 1 at ¶ 2.) Defendant provided dredging services at the Port of Stockton, California, and the action involved a dispute over the sinking of one of defendant's

5

1   barges at the Port of Stockton. (*Id.* at ¶ 5.) Therefore, the Court has personal jurisdiction over
2   defendant.

### B. Service of Complaint

In reviewing a motion for default judgment, the court must determine whether defendant was properly served with the summons and complaint. Fed. R. Civ. P. 4(c).

A return of service filed on December 31, 2024, indicates that defendant was served by personal service on defendant's designated agent for service of process, Registered Agent Solutions, Inc., as provided on the California Secretary of State website. (ECF No. 6; *see* ECF No. 11-1 at ¶ 8.) Based on the information in the return of service, it appears defendant was properly served. *See* Fed. R. Civ. P. 4(h) (a corporation must be served in a judicial district of the United States in the matter prescribed by Rule 4(e)(1) or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant"); *id.* at 4(e)(1) (an individual may be served by following state law in the state where the district court is located); Cal. Civ. Proc. Code § 416.10 ("A summons may be served on a corporation by delivering a copy of the summons and the complaint . . . to the person designated as agent for service of process . . . .").

### C. Application of *Eitel* Factors

#### 1. Possibility of Prejudice to Plaintiff

The Court considers whether plaintiff would suffer prejudice if default judgment is not entered. Such potential prejudice to the plaintiff militates in favor of granting a default judgment. *See PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Plaintiff filed the complaint against the defendants on December 23, 2024, and defendants have failed to respond to plaintiff's complaint or otherwise put forth a defense in this action. The present litigation cannot move forward, leaving plaintiff no recourse other than to seek a default judgment. Accordingly, the first factor weighs in favor of entering default judgment.

////

**2. Merits of the Substantive Claim and Sufficiency of Pleading**

"The second and third *Eitel* factors both examine the merits and sufficiency of a plaintiff's complaint, and accordingly, are often analyzed together." *Johnson v. Qolor LLC*, 2022 WL 3348589, at *1 (N.D. Cal. Aug. 12, 2022) (internal quotation marks and citations omitted). The court considers whether the allegations in the complaint are sufficient to state a claim on which plaintiff may recover. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *PepsiCo*, 238 F. Supp. 2d at 1175.

Plaintiff brings the complaint for a breach of a settlement agreement. This claim is analyzed under state law. In the Settlement Agreement, the parties have agreed that the "legality, interpretation, and enforcement" of the Agreement will be governed by California law. (Settlement Agreement at § D.14.) Accordingly, the Court will apply California law.

Under California law, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

Here, plaintiff has stated a claim for breach of contract against defendant. Plaintiff has alleged that there is a valid contract between the parties—the Settlement Agreement, a copy of which is attached to the complaint. (ECF No. 1 at ¶ 6; *see* Settlement Agreement.) Plaintiff has alleged that the parties agreed to a settlement that provided for dismissal of the prior action in exchange for payment by defendant. Plaintiff provided defendant with "written" notice of its intent to enforce the terms of the Settlement Agreement, as required by section 4 of the Settlement Agreement. (ECF No. 1 at ¶ 10; Settlement Agreement at § D.4.) The Settlement Agreement stated that if defendant failed to timely make any payment due, plaintiff would not take any action to enforce the terms of the Settlement Agreement unless plaintiff provided "written and email notice of the alleged default to [defendant] as provided in Section 10" of the agreement. (Settlement Agreement at § D.4.) Plaintiff has adduced evidence that a written letter was sent to defendant's president, Randall Steed, and to the addresses contained in the Settlement Agreement via USPS certified mail. (ECF No. 17; *see also* ECF No. 16.) Plaintiff alleges that

1   defendant paid the initial $100,000 payment and the following seven monthly payments, totaling
2   $490,000. (*Id.* at ¶ 9[2]; ECF No. 11-1 at ¶ 7.) Plaintiff has alleged that defendant's breach caused
3   plaintiff to lose money in the amount of $1,010,000. (*Id.* at ¶ 12.)
4       Therefore, plaintiff has stated a claim for breach of contract, and this element weighs in
5   favor of granting default judgment.

### 3. The Sum of Money at Stake

7       Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at
8   stake in relation to the seriousness of [d]efendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at
9   1176-77; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D.
10  Cal. 2003). This requires the court to assess whether recovery sought is proportional to the harm
11  caused by defendants' conduct. *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal.
12  2014) ("Default judgment is disfavored where the sum of money at stake is too large or
13  unreasonable in relation to defendant's conduct."). Here, plaintiff's complaint states that it seeks
14  damages in the amount of $1,010,000 plus costs of suit, interest, and attorney's fees. (ECF No. 1
15  at ¶ 13 & p.5.) In its motion for default, plaintiff explains that it seeks a total of $1,049,077
16  ($1,010,000 plus prejudgment interest of $39,077 owed as of the date of filing of the motion) plus
17  post-judgment interest. (ECF No. 11 at 4, 6.)
18      The award sought is reasonable, considering it is the amount owned under the Settlement
19  Agreement plus applicable interest. This factor weighs in favor of granting the default judgment.

### 4. The Possibility of a Dispute Concerning Material Fact

21      The court may assume the truth of well-pleaded facts in the complaint following the
22  clerk's entry of default. The Court was concerned about whether plaintiff complied with the
23  written notice requirement in the Settlement Agreement before seeking remedies in Court,
24  however, plaintiff provided a satisfactory response to this issue. (*See* ECF Nos. 16, 17.) Thus, the
25  Court finds no likelihood that any genuine issue of material fact exists. *See, e.g.*, *Elektra Entm't*

---

[2] The complaint states that defendant paid the initial payment and the following **six** payments, but the total amount paid includes the first seven monthly payments, and the motion for default states that the first seven monthly payments were made. (*See* ECF No. 11-1 at ¶ 7.)

*Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); *accord Philip Morris USA, Inc.*, 219 F.R.D. at 500; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. This factor favors the entry of a default judgment

### 5.  Whether the Default Was Due to Excusable Neglect

The record contains no indication that defendant's default was due to excusable neglect. Due process requires that interested parties be given notice of the pendency of the action and be afforded an opportunity to present their objections before a final judgment is rendered. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). While there is always a possibility that a defendant might appear and claim excusable neglect, where the defendant "w[as] properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion," this factor favors entry of default judgment. *Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001). On the record before the Court, it appears the defendant was properly served with summons and the amended complaint. Despite having been served with the summons and the complaint,[3] defendants have failed to respond. The lack of any indication of excusable neglect favors entry of a default judgment.

### 6.  Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But the mere existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (citation omitted); *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Rule 55 allows a court to decide a case before the merits are heard if defendant fails to appear and defend. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Although the Court is cognizant of the policy in favor of decisions on the merits, that policy does not, by itself, preclude the entry of default judgment.

---

[3] In this instance, there is no indication that plaintiffs served defendants with the notice of entry of default or the papers in support of the instant motion, but the Federal Rules of Civil Procedure did not require it. *See* Fed. R. Civ. P 5(a)(2); Fed. R. Civ. P. 55(b)(2).

### 7. Recommendation

Taken together, the *Eitel* factors support granting the request for default judgment. It is therefore recommended that a default judgment be entered.

## D. Remedies

The motion for default requests the following relief: $1,010,000 still owed under the Settlement Agreement, $39,077 of prejudgment interest owed as of the date of filing the motion for default, and post-judgment interest in accordance with 28 U.S.C. § 1961. (ECF No. 11 at 4, 6.) Pursuant to Rule 54 of the Federal Rules of Civil Procedure, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Plaintiff is required to prove all damages sought in the complaint. Allegations in the complaint as to the amount of damages are not entitled to an assumption of truth. *See TeleVideo Sys. Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

The Court notes that plaintiff requested attorney's fees and costs in its complaint, but not in their motion for default judgment. Therefore, the Court will not award attorney's fees or costs.

### 1. Damages

The Settlement Agreement provides that defendant would pay plaintiff a total of $1,500,000. (Settlement Agreement at § D.1.) Defendant has paid plaintiff $490,000 since entering into the settlement agreement. (ECF No. 11-1 at ¶ 7.) The Court concludes that defendant should be liable for damages for the breach of settlement agreement claim in the amount of $1,010,000.

### 2. Prejudgment Interest

The motion for default judgment also requests prejudgment interest. Plaintiff has requested "interest" in general in its complaint, which the Court construes as encompassing plaintiff's request for pre- and post-judgment interest. (ECF No. 1 at 5.) Plaintiff seeks prejudgment interest on the unpaid balance of $1,010,000, which plaintiff calculates as totaling $39,077. (ECF No. 11-1 at ¶ 10.) Plaintiff calculates this using the "one year T-bill rate" which was "approximately 4.87% on June 1, 2024, the day after defendant's deadline to cure the breach. (*Id.*)

      California law provides for an award of prejudgment interest where a plaintiff prevails in a breach of contract claim for an amount of damages that is certain or capable of being made certain by calculation. Cal. Civ. Code § 3287(a); *see Silhouette Outdoor Furniture, Inc. v. Glenroy Coachella, LLC*, 2019 WL 4418544, at *4 (C.D. Cal. July 2, 2019). Unless specified otherwise in the contract, the default interest rate for a breach of contract is 10 percent. Cal. Civ. Code § 3289(b). Here, it does not appear that the Settlement Agreement specifies an interest rate or instructs the parties to use the "T-bill" rate. Therefore, normally the Court would apply the 10 percent rate.

      Plaintiff's calculation for the prejudgment interest is based on the total amount of $1,010,000 and a single breach date of June 1, 2024. (ECF No. 11-1 at ¶ 10.) Plaintiff states that this prejudgment is owed as of March 18, 2025 (or for 290 days). (*Id.*) However, plaintiff has stated that the payments were due in monthly installments. Unless defendant has repudiated a contract that requires "continuing performance," such as the contract at issue here, each failure to perform constitutes a partial breach, not a total breach. *See Ripple Servs., Inc.* 2024 WL 5396570, at *6 (N.D. Cal. Dec. 5, 2024) (citing *Trs. For Alaska Laborers-Constr. Indus. Health & Sec. Fund v. Ferrell*, 812 F.2d 512, 517 (9th Cir. 1987)). Because plaintiff has stated that the payments were due in installments, it does not appear that each of the unpaid balances was in breach on June 1, 2024.

      For example, when plaintiff informed defendant about the initial breach, plaintiff stated that monthly payments through number 7 were "covered" in November 2023. (ECF No. 11-7 at 8.) Plaintiff then states that payments 8 to 13 were due May 31, 2024. (*Id.* at 9.) This makes sense per the Settlement Agreement timeline of one payment due each month after the initial payment. If the initial payment of $100,000 was remitted within 60 days of the Settlement Agreement executed date of February 8, 2023 (sometime in April 2023), then it makes sense that the thirteenth payment would have been due in May 2024. Therefore, only payments 8 to 13 were in breach in June 2024. The subsequent payments were in breach during the subsequent months that they went unpaid, i.e. payment 14 was due June 2024, payment 15 was due July 2024, payment 16 was due August 2024, etc. If each payment is in breach on a different date, this changes the

prejudgment interest calculation, as each monthly installment payment was in breach during a different month. *See Ripple*, 2024 WL 5396570, at *6.

Plaintiff has not provided details about when each payment was actually due, so the Court is unable to calculate the specific number of days between the breach and the judgment. However, plaintiff has requested prejudgment interest in the amount of $39,077. This amount appears to be less than the amount allowed under statute, therefore the Court will recommend granting plaintiff's request for prejudgment interest in the amount of $39,077.

### 3. Post-Judgment Interest

Plaintiff also seeks an award of post-judgment pursuant to 28 U.S.C. § 1961. This statute states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). This request should be granted with interest calculated at the rate provided by statute.

### IV. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, it is HEREBY RECOMMENDED as follows:

1. Plaintiff's motion for default judgment (ECF No. 11) be granted;
2. The Court award plaintiff $1,010,000 in damages pursuant to the Settlement Agreement;
3. The Court grant plaintiff's request for prejudgment interest in the amount of $39,077;
4. Post-judgment interest be awarded pursuant to 28 U.S.C. 1961; and
5. The Court enter judgment against the defendant Ross Island Sand & Gravel Company on the complaint's claim of breach of contract.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may

1 | waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir.
2 | 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  May 9, 2025

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

5, star.3680.24